IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Willie Kelly (#2013-0718209), )
)
      Plaintiff, )
)
v. ) Case No. 14 C 0439
)
Superintendent Martinez, et al., ) Judge Charles P. Kocoras
)
      Defendants. )

## **MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Willie Kelly ("Kelly"), a pretrial detainee at the Cook County Jail, brought this 42 U.S.C. §1983 action against Cook County Jail officials and employees, alleging that his constitutional rights were violated when he was moved from Division I to Division IX "supermax" without notice or cause and was housed in a freezing cold cell without any of his personal property. Before the Court is Defendants' motion for summary judgment. Defendants contend that summary judgment is appropriate because Kelly failed to exhaust administrative remedies before filing this federal lawsuit. Defendants also contend that Kelly had no liberty interest in remaining in Division I and that there is no record evidence showing that Defendants intended to punish Kelly when they moved him from Division I to Division IX. For the reasons discussed below, the Court grants Defendants' motion for summary judgment.

1

## BACKGROUND

**I. Northern District of Illinois Local Rule 56.1**

Under Local Rule 56.1(a)(3), as well as Rule 56(c), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). A court may consider to be true any uncontested fact in the movant's Rule 56.1 Statement that is supported by the record and not addressed by the opposing party. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *see also* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(b)(3)(C). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot

afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).

Consistent with the Local Rules, Defendants filed a statement of uncontested material facts along with their motion for summary judgment. (*See* Defs. Stmt. of Fact, Dkt. No. 26 ("DSOF").) Each substantive assertion of fact in the Local Rule 56.1(a)(3) statement is supported by evidentiary material in the record. Also consistent with the Local Rules, Defendants filed and served on Kelly a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. *See* Dkt. No. 28.

In response, Kelly filed a 39-page response to Defendants' motion for summary judgment. (*See* Pl. Mem. of Law, Dkt. No. 31 ("Pl. Mem. of Law"). Kelly's response consists of a two-page "memorandum of law" (Pl. Mem. of Law at pp. 1-2); thirty-two pages of exhibits (Pl. Mem. of Law at pp. 7-39); and a document titled "dispute of important facts," comprised of three enumerated paragraphs with references to case law and Kelly's exhibits (Pl. Memo of Law at pp. 3-6). Kelly did not, however, respond to Defendants' Local Rule 56.1(a)(3) statement of uncontested material facts. Accordingly, the facts set forth in Defendants' Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56. 1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635,

636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol–Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682–83 (7th Cir. 2003).

With the above standards in mind, the Court turns to the facts of this case and will incorporate Kelly's references to his exhibits so long as they would be admissible at trial and provide additional facts relevant to the Court's analysis. The Court, however, will not dig through Kelly's filing in an effort to independently identify disputed issues of fact. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies.").

## II. Relevant Undisputed Facts

On November 19, 2013, Kelly, who currently is a pre-trial detainee in custody of the Cook County Department of Corrections, was housed in Division I, Tier H-3 at Cook County Jail. (DSOF ¶¶ 5, 6.) Detainees housed in cells 10-19, including Kelly, were out for recreation during the 7 a.m. to 3 p.m. shift that day. (DSOF ¶¶ 6, 7.) At some point, Defendant Correctional Officer Baker ordered detainees to return to their cells. (DSOF ¶¶ 8-9.) The detainees refused to comply with Baker's order. (DSOF

¶ 10.) Higher-ranking officers were called to the tier and, after additional orders were issued, the detainees eventually returned to their cells. (DSOF ¶¶ 11-14.)

Fifteen to twenty minutes later, Defendants Superintendent Martinez and Sergeant Manos arrived at Division I, Tier H-3. (DSOF ¶ 15.) Martinez and Manos escorted Kelly from Division I to the gang unit office at Division V (DSOF ¶ 21), where Manos interrogated Kelly about the incident in Division I (DSOF ¶ 22). Kelly was then taken to Division IX and admitted to the "level system" or "ABO" because prison officials had reason to believe Kelly was involved in the refusal of detainees on Division I, Tier H-3 to return to their cells. (DSOF ¶¶ 23, 26.) Kelly was not placed in disciplinary segregation. (*See* DSOF ¶ 28.)

The "level system" at Cook County Jail provides for special incarceration of inmates deemed a security threat to jail personnel, civilians, and other inmates. (DSOF ¶ 24.) While in Division IX, Kelly was restricted to visits from only immediate family members, limited phone calls, and limited commissary purchases. (DSOF ¶¶ 25, 43.) Kelly remained in Division IX from November 19, 2013, to February 19, 2014. (DSOF ¶ 45.)

Cook County Jail has a grievance system that Kelly was made aware of by a television channel available to inmates that provides information on the jail's rules, policies and procedures. (DSOF ¶ 17.) Kelly was aware of the grievance system and

submitted no fewer than nine grievance forms produced during the course of this litigation. (*See* Defs. Ex. E & Pl.'s Mem. of Law at pp. 17-18, 22-23, 30-36.)

Specifically, Defendants identify five grievance forms that Kelly prepared and submitted from November 19, 2013 to February 28, 2014. On November 19, 2013, Kelly prepared and submitted a grievance form to Superintendent Martinez regarding the interaction Kelly had with Defendant Baker on that same day. (DSOF ¶ 16; *see* Defs. Ex. E, Inmate Grievance Form Control No. 2013x5316.) Kelly complained in his November 19, 2013 grievance that Baker denied "the high side 30 min of our dayroom time" and then "called me a bitch"; Kelly requested as relief, "I would like this c.o. to stop harassing me." (Defs. Ex. E, Inmate Grievance Form Control No. 2013x5316.) On December 10, 2013, Kelly submitted an Inmate Grievance Form that was marked a non-grievance request concerning his assignment to decks in Division IX where he was "forced to walk up a lot of stairs" and indicating that he "does not want to walk up stairs." (DSOF ¶¶ 29-31; *see* Defs. Ex. E.) On January 28, 2014, Kelly submitted an Inmate Grievance Form concerning an alleged lack of medical care for his leg. (DSOF ¶¶ 32, 33; Defs. Ex. E, Inmate Grievance Form Control No. 2014-0566.) And on February 22, 2014, Kelly again submitted an Inmate Grievance Form concerning an alleged lack of medical care for his leg. (DSOF ¶¶ 35, 36; Defs. Ex. E, Inmate Grievance Form Control No. 2014x1111.) On February 28, 2014, Kelly submitted an Inmate Grievance Form that was marked a non-grievance request and

concerned his cell being searched on February 8, 2014, without the presence of cameras. (DSOF ¶¶ 38-40; Defs. Ex. E.)

Documents attached to Kelly's response show that he submitted four additional grievance forms not identified by Defendants.[1] In particular, on December 16, 2013, Kelly submitted an inmate grievance form concerning his move to Division IX but requested only that his personal property be returned to him (Pl. Mem. of Law at p. 17), and on September 11, 2014, Kelly submitted an Inmate Grievance Form concerning his personal property that "has been missing since Nov. 18, 2013" (Pl. Mem. of Law at pp. 22-23). Kelly also appears to have submitted two grievances in March 2014 concerning his medical treatment. (Pl. Mem. of Law at pp. 34-35.)

Kelly subsequently filed this federal lawsuit under 42 U.S.C. §1983 against Cook County Jail officials and employees, alleging that his constitutional rights were violated when he was moved from Division I to Division IX "supermax" and housed in a freezing cold cell without any of his personal property. On February 19, 2014, the Court allowed Kelly to proceed only on his claim against Superintendent Martinez, Sergeant Baker, and Sergeant Manos arising from Kelly's placement in Division IX, allegedly as a punishment for a disciplinary infraction, without notice or an opportunity

---

[1] The Court notes that some of the grievances forms submitted by Kelly are duplicative of documents submitted by Defendants. For example, the document at page 18 of docket number 31 appears to be the second page of Grievance Form Control No. 2013x5316, submitted by Kelly on November 19, 2013, concerning Defendant Baker's conduct on that same day.

to be heard. (Feb. 19, 2014 Order, Dkt. No. 5.) Defendants Martinez, Baker, and Manos now move for summary judgment in their favor and against Kelly.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. To survive summary judgment, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Hemsworth*, 476 F.3d at 490. Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits will also be considered. *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003).

The Court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-moving party. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.,* 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

## **DISCUSSION**

Defendants move for summary judgment on three bases. First, Defendants argue that summary judgment in their favor is appropriate because Kelly failed to exhaust administrative remedies concerning his claim that Defendants violated his due process rights when he was moved from Division I to Division IX without notice or an opportunity to be heard. Second, Defendants contend that there is no evidence in the record that Defendants intended to punish Kelly when he was moved from Division I to Division IX. Third, Defendants contend that Kelly had no liberty interest in remaining in Division I.

The Prisoner Litigation Reform Act requires the exhaustion of "administrative remedies as are available." 42 U.S.C. § 1997e(a). An inmate must use "'all steps that

the agency holds out," and he must "do[] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011). Because "the primary purpose of a grievance is to alert prison officials to a problem," *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (internal citations and quotation marks omitted), the prisoner's grievance must include enough information to alert the prison officials of the wrong for which the prisoner seeks redress, *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Here, the parties identified nine grievances submitted by Kelly, and Kelly appears to have followed through on those grievances. The subject matter of the grievances, however, cannot fairly be read to put jail officials on notice that Kelly sought to challenge his placement in Division IX without notice or a hearing. In particular, four of the grievances submitted by Kelly concerned an alleged lack of medical care for Kelly's leg. (Defs. Ex. E, Inmate Grievance Form Control No. 2014-0566 dated Jan. 28, 2014; Defs. Ex. E, Inmate Grievance Control No. 2014x1111 dated Feb. 22, 2014; Pl. Mem. of Law at pp. 34-35, two Inmate Grievance Forms dated

March 2014.) And two of the grievances concerned events that occurred at Division IX but did not mention the circumstances surrounding Kelly's move to Division IX. Instead, the grievances complained about the search of Kelly's cell without the presence of cameras (Defs. Ex. E, Inmate Grievance Form dated Feb. 28, 2014) and his difficulty walking up stairs in Division IX (Defs. Ex. E, Inmate Grievance Form dated Dec. 10, 2013).

Similarly, the three grievances Kelly submitted that specifically reference the events of November 19, 2013, cannot be read to assert a challenge to the process used to place Kelly in Division IX. Instead, the grievance dated November 19, 2013, complains only about the events surrounding Kelly's encounter with Correctional Officer Baker and requests only that Kelly would like the "c.o. to stop harassing me." (Defs. Ex. E, Inmate Grievance Control No. 2013x5316 dated No. 19, 2013). The grievance dated December 16, 2013, while referencing Kelly's move from Division I to Division IX, complains primarily about Kelly's loss of personal property and requests only that his personal property be returned to him. (Pl. Memo. of Law at p. 17, Inmate Grievance Form dated Dec. 16, 2013). And the grievance dated September 11, 2014, complains only about the fact that Kelly's personal property had been missing since November 18, 2013. (Pl.'s Memo. of Law at pp. 22-23.) The fact that Kelly complained about some of the events that occurred on November 19, 2013, is insufficient to put the jail on notice that Kelly sought to challenge the process used to

11

place him in Division IX because Kelly never complained by way of a grievance about being placed in Division IX without notice or a hearing. The jail, therefore, did not have an opportunity to address the issue Kelly complains about in this federal lawsuit before Kelly filed suit. *See Stites v. Mahoney*, 594 F.App'x 303, 305 (7th Cir. 2015) (explaining that the one grievance that the plaintiff properly exhausted had nothing to do with the issues raised by the federal lawsuit and, thus, plaintiff failed to exhaust his administrative remedies on the issues before the court).

Kelly mentions being placed in "seg" on only one occasion in his grievances. Specifically, in the appeal section of grievance number 2013x5316, Kelly wrote: "I am still missing my property from Division One from this incident. I am still in seg." (Defs. Ex. E, Inmate Grievance Control No. 2013x5316 dated Nov. 19, 2013; *see* Pl. Mem. of Law at 18 ("I am still missing my personal property and still in seg because of this incident").) Raising an issue on appeal, however, is insufficient to exhaust administrative remedies. *See Peterson v. Rogan*, No. 2:11-CV-0007, 2012 WL 4020996, *3 (S.D. Ind. Sept. 12, 2012) (concluding that formal grievance and grievance appeal must contain the same subject matter as the lawsuit to effectively exhaust administrative remedies). But even if an issue could be exhausted by raising it on appeal, the statement "I am still in seg" is insufficient to put the jail on notice that Kelly sought to challenge the process used to place him in Division IX.

Kelly argues that he tried to exhaust his administrative remedies but was

"blocked by social service worker Robert Jewell," because Jewell processed some of the grievance forms submitted by Kelly as "non-grievances." In support of his argument, Kelly identifies the Inmate Grievance Form dated December 16, 2013, as an example of how his grievances were handled by Jewell. (*See* Pl. Mem. of Law at p. 3, referencing Ex. A to Kelly's complaint and stating, "Look in left hand corner top where it's marked N/A.") An examination of Kelly's Inmate Grievance Form dated December 16, 2013, reveals that the grievance addressed only Kelly's missing personal property and requested only, "I would like my personal property back." (Pl. Mem. of Law at p. 17.) The mere fact that the grievance was processed as a non-grievance does not show that Kelly was prevented from exhausting administrative remedies on the issue of his placement in Division IX because the grievance (as well as the other grievance forms produced by the parties and marked N/A) did not address the issue pursued by Kelly in this litigation.

Because Kelly failed to submit a grievance that addressed his complaints concerning his placement in Division IX without notice or a hearing, he failed to exhaust his administrative remedies as to his claim arising from his move from Division I to Division IX. The Court, therefore, declines to address Defendants' arguments regarding the merits of Kelly's claim because the Seventh Circuit has held that the issue of exhaustion is a threshold matter and should be addressed before proceeding to any

disposition on the merits. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (holding that exhaustion is a threshold issue); *Pavey*, 544 F.3d at 741-42.

Although the time for submitting a grievance has expired under the jail's policies, the dismissal of Kelly's claim is without prejudice, as this Court does not rule on whether a state court would apply an exhaustion requirement similar to that of 42 U.S.C. § 1997e(a) with respect to Kelly's claims. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice"). As such, the Court's ruling does not preclude Kelly from pursuing any relief that may be available to him through state court. But by operation of 42 U.S.C. § 1997e(a), Kelly has no further recourse in federal court. The dismissal constitutes a final appealable order. *See Maddox*, 655 F.3d at 716 (explaining that order dismissing section 1983 claim for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue); *Barnes v. Briley*, 420 F.3d 673, 676-77 (7th Cir. 2005) (same).

Finally, the Court notes that Kelly's argument in response to Defendants' motion for summary judgment addresses claims other than his due process claim. In particular, Kelly argues that he was subjected to excessive force when Superintendent Martinez allegedly ordered Baker and Manos to throw Kelly up against the wall and handcuff him before taking him to Division IX, that he was deprived of his personal property, and that he was housed in a freezing cold cell in Division IX. On February

19, 2014, the Court allowed Kelly to proceed only on his claim against Martinez, Baker, and Manos arising from Kelly's placement in Division IX, allegedly as a punishment for a disciplinary infraction, without notice or an opportunity to be heard. (Feb. 19, 2014 Order, Dkt. No. 5.) Consequently, the only claim properly before the Court is Kelly's claim concerning his move from Division I to Division IX.[2]

If Kelly wishes to appeal this decision granting summary judgment to Defendants, he may file a notice of appeal in this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Kelly plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Kelly chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of*

---

[2] Even if Kelly's excessive force, deprivation of personal property, and conditions of confinement claims were properly before the Court, his claims would fail. First, grievances produced by the parties show that Kelly did not grieve Defendants' alleged use of force. His only complaint to the jail concerning the events of November 19, 2013, concerned Defendant Baker calling him a vulgar name and his loss of property. Second, even though Kelly grieved the loss of his personal property, a deprivation of personal property caused by the unauthorized, negligent conduct of a state or local government actor does not give rise to a constitutional deprivation. *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986). Similarly, a deprivation of personal property caused by random, intentional, unauthorized conduct of a state or local government actor does not give rise to a claim under section 1983 if state courts provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984); *Gable v. City of Chicago*, 296 F.3d 531, 539-41 (7th Cir. 2002). In Illinois, the state law remedy for an intentional, unauthorized deprivation of property is a common law tort claim for conversion or replevin. *Tucker v. Williams,* 682 F.3d 654, 661 (7th Cir. 2012). Consequently, Kelly has no federal claim arising from the alleged deprivation of his personal property. Third, the Court explained in its order of February 19, 2014, that Kelly could not state a federal cause of action based merely on the temperature of his cell, and grievances produced by the parties show that Kelly did not grieve any issue concerning the temperature in his Division IX cell. Finally, to the extent Kelly now complains about the alleged lack of medical treatment he received while in Division IX, Kelly raised no such allegations in his complaint and cannot raise his claim now in response to summary judgment. *See, e.g., Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012); *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005).

*Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Kelly may also be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in in imminent danger of serious physical injury.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [25] is granted. This case is closed.

Date: 5/14/2015

_____
Charles P. Kocoras
United States District Court Judge